NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

FILED

FILED FEB 2 7 2007

LEONARD GREEN, Clerk

No. 05-5287

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| ERNST C. ZUNDEL and<br>INGRID A. ZUNDEL,<br><br>*Petitioners*,<br><br>v.<br><br>ALBERTO GONZALES,<br>Attorney General,<br><br>*Respondent*. | ON APPEAL FROM DENIAL OF<br>PETITION FOR WRIT OF HABEAS<br>CORPUS |

Before: **DAUGHTREY, Circuit Judge; COOK, Circuit Judge**; and **WEBER, Senior District Judge.**[*]

**PER CURIAM.** Mr. Ernst Zundel [1] and Mrs. Ingrid Zundel appeal from the district court's denial of their petition for writ of habeas corpus. We have jurisdiction to hear this appeal pursuant to § 242(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a). For the reasons discussed below, the petition for writ of habeas corpus is converted to a petition for review and the petition is **DENIED**.

---

[*]The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

[1]Mr. Zundel hereinafter is referred to as "petitioner."

## I. Background

Petitioner is a German citizen who, prior to his latest entry into the United States, had lived in Canada for 42 years.[2] There he had been an active proponent of Holocaust-revisionist theories and a writer of anti-semitic tracts. He entered the United States on March 12, 2000, under the Visa Waiver Pilot Program ("VWPP"), 8 U.S.C. § 1187. Pursuant to the VWPP, § 1187(b)(2), aliens from certain countries were authorized to enter the United States as non-immigrant visitors without a visa for a period not to exceed 90 days if the alien waived "any right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien." Petitioner left the United States shortly after his March entry, returned to Canada, and subsequently reentered the United States on May 21, 2000, without presenting any documents, although he was prepared to show the documentation he had been issued in March. Some time thereafter, petitioner began residing in Sevier County, Tennessee with his wife, Ingrid Zundel, a naturalized United States citizen whom he had married on January 19, 2000.

After taking up residence in Tennessee, petitioner applied for an adjustment of his immigrant status to permanent resident pursuant to 8 U.S.C. § 1255 based on his marriage to Ingrid. The Immigration and Naturalization Service ("INS")[3] scheduled a hearing on his application for June 12, 2001. Petitioner received a letter from the INS notifying him of the interview. Petitioner's attorney could not attend the hearing and, according to petitioner, sent letters to the INS by regular and registered mail requesting that the interview be rescheduled.

---

[2]Some of the facts set forth herein are taken from an earlier decision issued by this court in the course of petitioner's immigration proceedings. *See Zundel v. Berrong,* 106 F. App'x 331 (6th Cir. 2004).

[3]The INS has been abolished and its functions transferred to the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2142.

Petitioner heard nothing further from the INS until February 5, 2003. On that date, officers of the Sevier County Sheriff's Department, acting in conjunction with the INS, came to the Zundel home, took petitioner into custody, and transported him to the Blount County, Tennessee, jail. The officers did not have a warrant at the time of the arrest. They instead presented petitioner with a letter from the INS dated that same date and entitled "Decision." The letter indicated the INS had denied petitioner's application for permanent residency because he had abandoned his application by failing to appear for the June 12 interview and had failed to contact the INS during the ensuing six months to reschedule the interview. The letter also stated that "[t]here is no appeal of this decision." A warrant prepared later that day indicated that under § 217 of the INA, 8 U.S.C. § 1187, petitioner had entered the United States "on or about the day of March 12, 2000 [and] is subject to deportation."

While petitioner was in the Tennessee prison, on February 13, 2003, he and Ingrid Zundel filed with the district court a "Writ of Habeas Corpus, Petition for Temporary Restraining Order and Preliminary Injunction, Complaint for Constitutional Violations, Petition to Set Bond." They sought to restrain respondents from transferring petitioner out of the jurisdiction pending a hearing; the issuance of a writ freeing him from unlawful detention; injunctive relief pertaining to the setting of a bond; a preliminary hearing, inasmuch as petitioner was allegedly being wrongfully imprisoned and politically persecuted as a result of the exercise of his First Amendment rights; and permanent relief and an award of damages for violation of their constitutional rights. The district court denied the request for preliminary relief but did not enter a judgment. This court denied the Zundels' subsequent request for an emergency stay.

Petitioner was subsequently deported to Canada on February 17, 2003. At the time of his deportation, he purportedly received a paper from the INS notifying him that he could not reenter

the United States for 20 years pursuant to 8 U.S.C. § 1182(a)(9)(A)(ii). Canadian officials took petitioner into custody and detained him following his deportation. This court determined that petitioner's removal to Canada had rendered his requests for preliminary relief moot and thereby precluded the court from reviewing the district court's disposition of his claims for such relief. The court determined, however, that the requests for a writ of habeas corpus vacating the deportation order and for damages for alleged constitutional violations were not moot. The court found that, on remand, petitioner could pursue his habeas petition insofar as he challenged his deportation and insofar as that order had continuing collateral consequences (e.g., the alleged 20-year bar on reentry), as well as the apparent *Bivens* claim. The court identified the following issues raised by the parties as matters for the district court to take up in the first instance: (1) whether 8 U.S.C. § 1252(a)(2)(B) or (g), which exempt certain decisions of the Attorney General from judicial review, stripped the federal courts of jurisdiction to hear the remaining claims; (2) whether petitioner waived his right to contest removal, which is a condition of entry under the VWPP, 8 U.S.C. § 1187(b), because it remained unclear whether petitioner most recently entered the country under that program; and (3) the propriety of Ingrid Zundel's involvement in the suit.[4]

The Zundels subsequently filed first and second amended petitions for a writ of habeas corpus and complaints for injunctive relief and damages on September 24, 2004, and November 10, 2004. They claimed that petitioner's First Amendment rights and his rights to liberty and due process were violated by his arrest, detention and removal. Ingrid Zundel raised a *Bivens* claim seeking damages based on her right to have petitioner, as an immediate relative spouse of a United States citizen, eligible to adjust his status to a lawful permanent resident status. Petitioner sought a writ of habeas corpus, a writ of mandamus, and injunctive relief under the Administrative

---

[4]Neither side has addressed Ingrid Zundel's standing.

Procedure Act. He requested that all deportation and removal orders against him be voided and rescinded, that Canadian authorities be notified that he was permitted to return to the United States immediately, and that he be permitted to interview on the application for adjustment of status.

Respondents filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and a supporting memorandum. Respondents argued that subject matter jurisdiction was lacking on the grounds that (1) the decision to not adjudicate the merits of petitioner's application for adjustment of status and the execution of his deportation order were discretionary actions not subject to judicial review pursuant to 8 U.S.C. § 1252(g); (2) the petition did not present a "pure question of law" as required for habeas review under *INS v. St. Cyr,* 533 U.S. 289, 298 (2001); and (3) petitioner's status as a non-immigrant alien present in the United States pursuant to the VWPP precluded review by the district court of the deportation order.

Because petitioner was incarcerated in Canada and faced deportation to Germany, the district court held an expedited hearing on the petition for writ of habeas corpus and on the respondents' motion to dismiss. The district court issued a decision finding that it lacked subject matter jurisdiction over the petition for a writ of habeas corpus. First, the district court determined that the INS's decision to institute removal proceedings against petitioner was a discretionary decision to "commence proceedings" against an alien that was shielded from judicial review under 8 U.S.C. § 1252(g). The district court also found that petitioner had waived any right he might have had to a hearing before deportation by signing a waiver of his right to such a hearing in connection with his entry into the United States on March 12, 2000, under the VWPP, 8 U.S.C. § 1187(b)(2). The district court addressed petitioner's argument that his alleged reentry into the country on May 21, 2000, rather than his March 2000 entry, was the critical entry for purposes of the proceedings against him. The court rejected petitioner's position that the May admission was not governed by the VWPP

because the pilot program expired in April 2000, prior to his May reentry, and did not take effect again until several months later, when it was enacted as a permanent program.[5] The district court reasoned that any VWPP "green card" (the I-94W petitioner signed whereby he agreed to waive his rights every time he renewed his application for entry under the VWPP) that was issued before April 2000 was valid for 90 days, even after expiration of the program, so that presumably any entry within that 90-day period was necessarily pursuant to the VWPP. Finally, the district court rejected petitioner's claim that his deportation was politically motivated because there was no evidence of this in the record and, even if the deportation was politically motivated, it was not the role of the judiciary to interfere with the Executive's political decision.

On December 10, 2004, the Zundels filed a motion for reconsideration or, in the alternative, to amend order. The district court denied the motion on January 25, 2005. The court rejected petitioner's argument that § 1252(g)'s prohibition against review by the courts of a decision by the Attorney General to "commence proceedings" only applies to proceedings commenced before an Immigration Judge ("IJ") and appealed to the Board of Immigration Appeals ("BIA"). The court also rejected the argument that § 1252(g) is unconstitutional, finding that petitioner had no constitutional right to a hearing challenging a discretionary decision of the Attorney General to deport an alien who has overstayed his admissions period, and if petitioner had such a constitutional right, he waived it by executing the waiver on March 12, 2000.

## II. Grounds for relief

Petitioner and Ingrid Zundel filed this appeal from the decision of the district court. They

---

[5]It was actually the "pilot program period" that expired on April 30, 2000, pursuant to 8 U.S.C. § 1187(f). The statute authorizing the pilot program remained in effect until October 29, 2000, when the VWPP was enacted as a permanent program known as the Visa Waiver Program. *See* Pub. L. No. 106-396, 114 Stat. 1637.

describe the acts that they believe warrant habeas relief as "the apprehension of Ernst Zundel based on an erroneous decision by the INS that he could be treated as a VWPP entrant, including his unlawful apprehension without any arrest warrant, and (mainly) his subsequent removal based on the same error . . . also . . . the acts of the AG were motivated by hostility directed at his beliefs." They argue that the district court applied the wrong standard of review in considering respondents' motion to dismiss pursuant to Rule 12(b)(1) and that the district court should have allowed them to present evidence. They seek an order directing the district court to issue a writ of habeas corpus or to allow them to conduct discovery on their claims.

Petitioner argues that § 1252(g) does not bar judicial review of his claims. He alleges that there is no final order of removal to be reviewed by the court because the INS issued only a "notice" and a "decision." Petitioner further contends that the decision to remove him was not a discretionary decision to "commence proceedings' that is shielded from judicial review pursuant to 8 U.S.C. § 1252(g) because there were no "proceedings" before an IJ as contemplated by the statute, only a removal process initiated by the Attorney General. Petitioner also argues that "[a]cts of discriminatory hostility" such as those purportedly underlying the decision to remove him are unconstitutional and cannot be discretionary so as to exempt the removal decision from judicial review.

Petitioner further contends that 8 U.S.C. § 1187(b)(2) does not deprive the courts of jurisdiction over this appeal. He claims that this court retains the authority to determine whether the VWPP has any applicability to this case.

### III. Analysis

**A. Conversion of the habeas petition to a petition for review**

During the pendency of this appeal, on May 11, 2005, the REAL ID Act of 2005, Pub. L. No.

109-13, Div. B, 119 Stat. 231, became effective. The Act imposes a judicial review scheme pursuant to which a petition for review in a federal appellate court is "the sole and exclusive means of judicial review" for most orders of removal. 8 U.S.C. § 1252(a)(5). Section 106(c) of the Act provides that all habeas petitions brought by aliens that challenge a final order of removal and that were pending in the district courts on the date the REAL ID Act became effective are to be transferred to the appropriate courts of appeals and converted to petitions for review. Thus, district courts no longer have jurisdiction over habeas petitions challenging "final administrative order[s] of removal, deportation, or exclusion." *Kellici v. Gonzales*, 472 F.3d 416, 419 (6th Cir. 2006). Instead, courts of appeals can consider in the first instance constitutional claims and questions of law presented in a petition for review. *See* 8 U.S.C. § 1252(a)(2)(D).

Congress did not address in the REAL ID Act how to treat an appeal from a district court habeas decision that was pending before a court of appeals when the Act was enacted. The appellate courts that have considered this issue have held that those habeas petitions that were pending before the appellate courts on the effective date of the Act are properly converted to petitions for review and retained by the appellate courts. *See Schmitt v. Maurer*, 451 F.3d 1092 (10th Cir. 2006); *Gittens v. Menifee*, 428 F.3d 382 (2d Cir. 2005); *Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1055 (2006); *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050 (9th Cir. 2005); *Bonhometre v. Gonzales*, 414 F.3d 442 (3d Cir. 2005), *cert. denied*, 126 S.Ct. 1362 (2006). Petitioner argues that this case is distinguishable from the decisions of these other circuits because, unlike the petitioners in those cases, he did not have a hearing before a decision was issued on his habeas petition. Petitioner also contends that it is unlikely Congress intended the REAL ID Act to apply in a case involving the application of § 1187 because there is no "order of removal" as that term is used in § 1252(a)(5), i.e., an order issued by an IJ following a

hearing, but rather removal is determined by the district director without referral of the alien to an IJ for a determination of deportability pursuant to 8 C.F.R. § 217.4(b)(1). Petitioner claims that to convert the habeas petition to a petition for review and deny him the opportunity to develop through discovery, and to present at a hearing, the facts underlying his claims would deprive him of an adequate opportunity for review of his claims and constitute a violation of the Suspension Clause.

The statutory scheme requires that the petition for writ of habeas corpus before the court be treated as a petition for review. In providing for the transfer of pending habeas petitions to the courts of appeals, the REAL ID Act draws no distinction between cases in which a hearing on the merits of the habeas petition has been held and cases in which there has been no hearing. Thus, the fact that petitioner has not had a hearing on the merits of his habeas petition does not preclude treating the habeas petition as a petition for review. Moreover, petitioner's argument that the INS has not issued an "order of removal" that could be the subject of a petition for review is not well-taken. Section 1252(a)(5) does not limit the term "order of removal" to an order issued following a hearing before an IJ. Finally, petitioner has not shown that a petition for review fails to provide an adequate opportunity for review of his challenge to his removal and is therefore an inadequate substitute for the writ, such that treating the habeas petition as a petition for review would result in a violation of the Suspension Clause. *See Swain v. Pressley,* 430 U.S. 372, 381 (1977) (substitution of collateral remedy which is neither inadequate nor ineffective to test the legality of person's detention does not constitute a suspension of the writ). Accordingly, the habeas petition must be converted to a petition for review.

### B. Title 8 U.S.C. § 1252(g)

Whether the court has jurisdiction over the petition for review depends on the nature of the challenged action. Title 8 U.S.C. § 1252(g) strips the courts of jurisdiction to review three discrete

actions that the Attorney General may take "which represent the initiation or prosecution of various stages in the deportation process." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). These are the decision or action to "commenc[e] proceedings, adjudicat[e] cases, [or] execut[e] removal orders." *Id.* The Supreme Court has "interpreted narrowly the three actions listed in § 1252(g) in light of § 1252(g)'s purpose of protecting the Attorney General's discretionary decision to not abandon the alien removal endeavor." *Mustata v. U.S. Dep't of Justice,* 179 F.3d 1017, 1020 (6th Cir. 1999) (citing *American-Arab Anti-Discrimination Comm.*, 119 S.Ct. at 943-45).

The decision to remove petitioner was based on the INS's determination that he had been admitted to the United States under the VWPP and he had stayed in the country beyond the period for which he was authorized to remain in violation of § 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B). On February 5, 2003, the INS issued a "Notice of Intent to Deport for Violating the Terms of Your Admission under Section 217 of the [INA]" signed by the district director. The Notice stated that the INS had determined that petitioner entered the United States pursuant to § 217 of the INA; he executed a Form I-791 or Form I-94W, VWPP Information Form, that explained to him the conditions of admission under the VWPP; and when he signed the form(s), he also waived his right to contest deportability before an IJ and the BIA and to judicial review of any of the above decisions. The Notice further stated that the INS had determined that petitioner violated the terms of his admission under § 217 of the INA on the grounds that he had been admitted to the United States at Niagara Falls, New York, on or about March 12, 2000, as a non-immigrant visitor for pleasure with authorization to remain in the United States for a temporary period not to exceed June 11, 2000, and he had remained in the United States beyond that period without authorization from the INS and in violation of § 237(a)(1)(B) of the INA, as amended. The Notice therefore advised petitioner that the INS had entered an order that he be deported and removed from the United States.

The INS issued a Warrant of Deportation pursuant to § 217 that same date.

When he was taken into custody pursuant to the decision of the INS on February 5, 2003, petitioner was presented with a document issued by the INS captioned "Decision." The Decision referenced the fact that on October 4, 2000, petitioner had filled out an I-485 form to have his status adjusted from that of a B1/B2 temporary visitor with a visa to a lawful permanent resident and that an interview had been scheduled for which he failed to appear. The Decision advised petitioner that his failure to appear or to request a rescheduling had resulted in the termination of his petition and application based on abandonment. The Decision closed by advising petitioner that because he had not filed a motion to reopen or reconsider as of the date of the decision, his I-130 petition and I-485 Application were being denied, and there was no appeal of the decision.

Petitioner insists that he does not challenge an exercise of the Attorney General's discretion to commence proceedings but instead claims that there was no legal basis for his removal. The gist of his claim appears to be two-fold. First, he claims that the decision to issue an order of removal was unconstitutional because it was based on the exercise of his First Amendment rights and hostility directed at his political beliefs. Second, he argues that the decision was based on the improper determination that he had entered the country under the VWPP in May 2000 and had waived his right to contest any action to deport him in connection with that entry, when in fact he had not. Petitioner does not appear to dispute that he was in the country illegally at the time he was arrested and removed.

Petitioner's claim that the decision to issue an order of removal was based on the exercise of his First Amendment rights and hostility directed at his political beliefs is properly characterized as a challenge to a discretionary decision to "commence proceedings" and an exercise of prosecutorial discretion under the authority of *American-Arab Anti-Discrimination Comm., supra*.

As such, petitioner's First Amendment challenge is insulated from judicial review pursuant to § 1252(g).

Insofar as petitioner claims that the INS erroneously determined that he had entered the country under the VWPP and thereby waived his right to contest his removal, § 1252(g) does not bar judicial review of this challenge to the removal proceedings. Petitioner apparently claims that this determination resulted in a denial of his due process rights in the course of the removal process because if the erroneous determination had not been made, he would have been entitled to a hearing before an IJ prior to his removal. This is not properly characterized as a challenge to the decision to "commence proceedings, adjudicate cases, or execute removal orders." The court therefore has jurisdiction to determine whether petitioner waived his right to contest his removal by executing the I-94W in connection with his entry on March 12, 2000.

## C. Waiver of petitioner's right to contest his removal

According to the government, petitioner entered the country legally on March 12, 2000, under the VWPP, pursuant to which he was authorized to remain in the country for no more than 90 days. The government notes that if he departed the country for a contiguous territory during that 90-day period, he could be readmitted to the country for the balance of the 90-day period pursuant to 8 C.F.R. § 217.3(b), which provides as follows:

> An alien admitted to the United States under this part may be readmitted to the United States after a departure to a foreign contiguous territory for the balance of his or her original [VWPP] admission period if he or she is otherwise admissible and meets all conditions of this part with the exception of arrival on a signatory carrier.

The government argues that petitioner was simply exercising the privilege of being able to travel between the United States and Canada afforded under § 217.3(b) when he left the country and reentered in May, so that the reentry had no effect on the terms and conditions of his March VWPP

admission. The government disputes petitioner's contention that his May admission was not governed by the VWPP, and therefore was not subject to the waiver of his right to contest any order of deportation that he signed in March, because § 217.3(b) expired together with the sunset of the VWPP "pilot program period" on April 30, 2000.

The government's argument is well-taken. Under the VWPP and its accompanying regulations, and pursuant to the terms of the waiver he executed, petitioner was authorized to remain in the United States or to depart to a contiguous territory and reenter the country for a 90-day period beginning March 12, 2000. Accepting petitioner's version of the facts as true, he exercised his right to depart and reenter the country during that 90-day period. His argument that the VWPP and its governing regulations were not in effect at the time of his reentry and therefore did not govern his admission is unfounded. Title 8 U.S.C. § 1187, which authorized the Attorney General to establish the VWPP, was effective until October 29, 2000. It allowed for the waiver of a visa for an alien who applied for admission during the "pilot program period," which the statute defined as the period beginning "October 1, 1988 and ending April 30, 2000." Thus, the statute authorizing the VWPP remained in effect even after expiration of the "pilot program period." The regulations governing the admission and readmission of those aliens who had been provided a visa waiver under the VWPP prior to expiration of the "pilot program period," and for whom the 90-day admission period had not expired by the time the "pilot program period" elapsed, likewise remained in effect. To hold otherwise would mean that such individuals, though in the country legally, would have been subject to immediate removal as of April 30, 2000. Similarly, an alien who left the country prior to April 30, 2000, and who sought to return before expiration of the 90-day period, would be subject to being denied reentry, despite having been granted authorization for reentry pursuant to § 217.3(b) when he obtained his waiver. These scenarios are inconsistent with the express language of the statute and

the accompanying regulations. Because § 1187 and § 217.3(b) remained in effect at the time of petitioner's May entry into the United States, and because petitioner's entry was within the 90-day admission period for which he had been provided a visa waiver under the VWPP, petitioner waived his right to contest his removal pursuant to § 1187(b)(2).

## IV. Conclusion

For all of the reasons set forth above, the petition for writ of habeas corpus is converted to a petition for review and the petition is **DENIED**.