UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ERNST C. ZUNDEL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.:  3:03-CV-105 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL MUKASEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court on three pending motions.  Plaintiffs Ernst

Christof Friedrich Zundel ("Mr. Zundel") and Ingrid Zundel ("Mrs. Zundel") have filed a

Motion for Order Allowing Filing of Third Amended and Supplemented Petition and

Complaint (the "TASC"); and for Order Confirming Right to Discovery [Doc. 171];

defendants Michael Mukasey, *et al.* (the "Federal Defendants") have filed a Renewed Motion

to Dismiss the Remaining Claims Against Federal Defendants [Doc. 157]; and defendant

James Berrong ("Sheriff Berrong") has filed a Renewed Motion to Dismiss [Doc. 162].  The

parties have filed responses and replies to each pending motion.  The Court has carefully

reviewed the pending motions, the responses, and the supporting materials in light of the

applicable law [Docs. 50, 157, 162, 165, 169, 171, 175, 179, 184, 185, 186, 187, 192].  For

the reasons set forth herein, the Zundels' Motion for Order Allowing Filing of the TASC; and

for Order Confirming Right to Discovery [Docs. 169, 171] will be denied; the Federal

Defendants' Renewed Motion to Dismiss the Remaining Claims Against Federal Defendants

[Doc. 157] will be granted; and Sheriff Berrong's Renewed Motion to Dismiss [Doc. 162] will be granted.

## I.   RELEVANT BACKGROUND

This civil case arises out of the arrest and deportation of Mr. Zundel in February 2003 by the Blount County, Tennessee Sheriff's Department and the Immigration Naturalization Service (the "INS").  Mr. Zundel is a German citizen who entered the United States in March 2000, under the Visa Waiver Pilot Program (the "VWPP").  *See* 8 U.S.C. § 1187.[1]  Mr. Zundel left the United States shortly after his March entry, but reentered the country in May 2000.  Thereafter, Mr. Zundel took up residence in Tennessee and applied for an adjustment of his status from immigrant to permanent resident based on his marriage to Mrs. Zundel. *See* 8 U.S.C. § 1255.[2]

The INS scheduled a hearing on Mr. Zundel's adjustment application for June 12, 2001.  Neither Mr. Zundel nor his attorney were present at the hearing.  Mr. Zundel did not contact the INS to reschedule the hearing.  On February 5, 2003, officers of the Sevier County Sheriff's Department, acting in conjunction with the INS, came to the Zundels' home, took Mr. Zundel into custody, and transported him to the Blount County, Tennessee jail.  The officers did not have an arrest warrant, but they presented Mr. Zundel with a letter from the INS indicating that Mr. Zundel's application for permanent residency had been

---

[1] 8 U.S.C. § 1187 describes the VWPP and provides that "[t]he alien is applying for admission during the program as a nonimmigrant visitor for a period not exceeding 90 days."  8 U.S.C. § 1187(a)(1).

[2] 8 U.S.C. § 1255 states the grounds for adjustment of status.  8 U.S.C. § 1255.

denied due to abandonment of the application, his failure to appear at the June 2001 interview, and his subsequent failure to contact the INS to reschedule an interview. The INS letter also stated that there was to be no appeal of the decision.[3]

On February 13, 2003, the Zundels filed this action,[4] along with a petition seeking a writ of habeas corpus, a preliminary restraining order, a preliminary injunction, and a complaint for constitutional violations against Sheriff Berrong in his official capacity and several named Federal Defendants (the "Initial Petition and Complaint") [Doc. 1]. On September 24, 2004, the Zundels filed their first amended petition and complaint which sued additional Federal Defendants[5] (the "First Amended Petition and Complaint") [Doc. 16].

On October 26, 2004, the Zundels filed a motion for leave to file a second amended complaint and supplemented petition and complaint [Doc. 32]. On November 10, 2004, the Zundels filed their second amended and supplemented complaint and petition (the "SASC") [Doc. 50].[6] The Court granted the motion and the Zundels filed the SASC on November 15, 2004 [Doc. 57]. The SASC states four claims for relief: (1) a writ of habeas corpus; (2)

---

[3]Other facts are set out in *Zundel v. Gonzales*, 230 F. App'x 468 (6th Cir. Feb. 27, 2007), *cert. denied* 128 S. Ct. 1085 (2008) (unpub.).

[4]This case was originally assigned to Judge James H. Jarvis, United States District Judge.

[5]The Federal Defendants named in the First Amended Petition and Complaint were: John Ashcroft, the INS, Michael Conway, Gary Slaybaugh, Tom Ridge, and Does I through X [Doc. 16]. The Zundels' First Amended Petition and Complaint also included a claim for a writ of mandamus, a claim for injunctive relief under the Administrative Procedures Act, 5 U.S.C. §§ 702, *et seq.* (the "APA"), and a *Bivens* damages claim by Mrs. Zundel [Doc. 16]. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Nacotics* , 403 U.S. 388 (1972).

[6]The SASC sued two additional Federal Defendants: the United States of America and Jimmy Mounce [Doc. 50].

relief pursuant to a writ of mandamus; (3) an injunction under the Administrative Procedures Act, 5 U.S.C. §§ 702, *et seq.* (the "APA"); and (4) *Bivens* damages on behalf of Mrs. Zundel and against the Federal Defendants and Sheriff Berrong, pursuant to 8 U.S.C. §§ 1151(b)(2) and 1154. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Nacotics*, 403 U.S. 388 (1972).

On February 9, 2005, the Court dismissed, with prejudice, the Zundels' petition for a writ of habeas corpus [Doc. 103]. The Zundels appealed this dismissal to the United States Court of Appeals for the Sixth Circuit. On October 19, 2005, a protective order was granted staying discovery and quashing any outstanding notices of depositions pending the Zundels' appeal of the denial of their habeas corpus petition [Doc. 142]. On May 17, 2006, the Zundels filed a motion for modification to allow discovery and/or to allow amendment to the SASC [Doc. 143]. On June 16, 2006, this motion was denied [Doc. 150].

On February 27, 2007, the Sixth Circuit denied the habeas corpus petition for review, thus affirming the Court's dismissal of Mr. Zundel's petition for writ of habeas corpus. *See Zundel v. Gonzales*, 230 F. App'x 468 (6th Cir. Feb 27, 2007), *cert. denied* 128 S. Ct. 1085 (2008) (unpub.). The Zundels requested an *en banc* rehearing. The Sixth Circuit denied the request. The Zundels then filed a petition for writ of certiorari with the Supreme Court of the United States on November 20, 2007 [Doc. 154]. The petition was denied by order of the Supreme Court on January 14, 2008 [Doc. 155].[7]

_____

[7]On July 22, 2007, this case was reassigned to the Honorable Thomas A. Varlan, United States District Judge [Doc. 152].

On March 25, 2008, the Federal Defendants filed a renewed motion to dismiss the SASC [Doc. 157]. On May 23, 2008, Sheriff Berrong filed a renewed motion to dismiss the SASC [Doc. 162]. On June 2, 2008, the Zundels filed a motion to amend and confirm right to discovery, along with the proposed TASC [Docs. 169, 171]. The TASC abandons the claim for a writ for habeas corpus and proposes the following amendments to the SASC: the addition of substantive allegations involving Mr. Zundel's February 2003 arrest in Tennessee; several amendments to the prayer for relief to "state and clarify" the Zundels' claims for writs of mandamus and injunctive relief [Doc. 169, pp. 31-32]; the addition of a claim for *Bivens* damages on behalf of Mr. Zundel [Doc. 169, ¶¶ 119-32]; and the conversion of official capacity Federal Defendants John Ashcroft and Tom Ridge into individual capacity Federal Defendants and the addition of Condoleeza Rice as a Federal Defendant [Doc. 169, ¶¶ 5, 12].

## II.     ANALYSIS

As stated above, after the Federal Defendants and Sheriff Berrong filed renewed motions to dismiss [Docs. 157, 162], the Zundels filed a motion to amend and confirm right to discovery, along with the proposed TASC [Docs. 169, 171]. Because resolution of the issues underlying the motion to amend and confirm right to discovery are interrelated to the issues underlying the renewed motions to dismiss, the Court will address the Zundels' motion to amend and confirm right to discovery and the renewed motions to dismiss together.

In the renewed motions to dismiss, the Federal Defendants and Sheriff Berrong argue that the SASC should be dismissed for lack of subject matter jurisdiction and failure to state

a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). *See* Fed. R. Civ. P. 12(b)(1), (6). The Federal Defendants and Sheriff Berrong also argue that the Zundels' proposed amendments in the TASC cannot cure the Court's lack of subject matter jurisdiction and therefore the amendments are futile. *See* Fed. R. Civ. P. 12(b)(1), (6); Fed. R. Civ. P. 15(a). Additionally, the Federal Defendants and Sheriff Berrong argue that the amendments in the TASC are barred by the applicable statute of limitations for a *Bivens* damages claim and by Federal Rule of Civil Procedure Rule 15(c). *See* Fed. R. Civ. P. 12(b)(1), (6); Fed. R. Civ. P. 15(a), (c).

## A.     Standards of Review

### 1.     Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a claim for relief may be dismissed if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of proving jurisdiction and a court is empowered to resolve factual disputes when subject matter jurisdiction is challenged. *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 224 (6th Cir. 2007) (quoting *Moir v. Greater Cleveland Reg'l Transit. Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

### 2.     Federal Rule of Civil Procedure Rule 12(b)(6)

Because the Federal Defendants filed an Answer [Doc. 92] to the SASC, the Court will view the Federal Defendants' renewed motion to dismiss as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Fed. R. Civ. P. 12(c). The Court reviews a motion for judgment under Rule 12(c) in the same way it reviews a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 761 (6th Cir. 2006).

In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008); *see also* Fed. R. Civ. P. 12(b)(6). The complaint must contain a "short and plan statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Accordingly, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop*, 520 F.3d at 519 (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

The issue is not whether the plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his or her claim. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

### 3. Federal Rule of Civil Procedure 15(a)

Under the Federal Rules, a party amending a pleading after a responsive pleading has been served "may amend his pleading only by leave of court . . . and leave shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a). The rationale for this liberal

policy is to allow disputes to be resolved on the merits and not as a result of technical objections to the pleadings. *See Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). The Supreme Court has stated that leave to amend should be granted under Rule 15(a) unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

A motion for leave to amend may be denied for futility "if the court concludes that the pleading as amended could not withstand a motion to dismiss*." Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (citing *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986)). Accordingly, "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) (citation omitted).

### 4.     Federal Rule of Civil Procedure Rule 15(c)

Federal Rule of Civil Procedure 15(c) permits amendments to relate back to the date of the original pleading only when relation back is permitted by the law that provides the statute of limitations, the claim or defense raised in the amended pleading arose out of the conduct, transactions, or occurrences alleged in the original complaint, or the amendment changes the party or the name of the party, and the new party will not be prejudiced and knew or should have known that the action could have been brought against him. *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1999) (citing Fed. R. Civ. P. 15(c)). Rule 15(c) will

generally not permit an amendment when a party alleges entirely new transactions in an amended complaint. *See Stewart v. Shelby Tissue, Inc.*, 189 F. R. D. 357, 360 (W.D. Tenn. 1999).

**B.      The Zundels' Petition for a Writ of Habeas Corpus**

As stated above, the Zundels initially sought a writ of habeas corpus. The Zundels' petition for a writ of habeas corpus was dismissed, with prejudice, by the Court [Doc. 103], and this dismissal was affirmed by the Sixth Circuit. *See Zundel*, 230 F. App'x 468. The Zundels then filed a petition for a writ of certiorari on this issue with the Supreme Court. That petition was denied. Accordingly, this issue is res judicata and it will not be further considered.

**C.      The Zundels' Claims for a Writ of Mandamus and an Injunction[8]**

The SASC seeks a writ of mandamus and/or an injunction under the APA to require the Federal Defendants "to nullify and cancel and void the decisions of the INS issued on February 5, 2003 or thereafter pertaining to [the Zundels], to permit [Mr. Zundel] an interview on his application of adjustment of status pursuant thereto, readmitting [Mr.] Zundel into the United States in order to accomplish said interview; and/or for such other and further mandamus relief to which [Mr. Zundel] may be entitled." [Doc. 50, p. 24]. The SASC also asserts an allegation requesting a "motion for reconsideration of the denial of the Adjustment Application." [Doc. 50, ¶¶ 112, 113].

---

[8] In the SASC, the Zundel's claims for the writ of mandamus and the injunction differ only in that the request for an injunction also seeks relief against the United States of America [*See* Doc. 50].

The proposed TASC amends the claim for a writ of mandamus and requests the Court to "command[] . . . Mukasey, Chertoff, Rice, and the United States of America and Conway, or their successors in interest as applicable" to (1) admit Mr. Zundel to the United States once he is released from custody in Germany; (2) permit Mr. Zundel to interview on his application for adjustment of status; (3) "[n]ullify, void, rescind, and cancel" all documents relating to Mr. Zundel's deportation and removal; (4) process Mr. Zundel for permanent residence when he is able to return to the United States; (5) cancel the twenty (20) year bar on Mr. Zundel's reentry to the United States that was ordered as part of his deportation and removal; (6) immediately notify the German authorities that Mr. Zundel is permitted to return to the United States; and (7) immediately take all steps "within their power" to effectuate Mr. Zundel's return to the United States [Doc. 169, pp. 31-32]. The proposed TASC also amends the Zundels' claim for an injunction and restates essentially the same for relief requested in the claim for mandamus, with only the addition of the INS as a named defendant [Doc. 169, p. 32]. Lastly, in the TASC, the Zundels allege new factual allegations regarding Mr. Zundel's arrest and time spent in the Blount County, Tennessee jail.

Title 8 U.S.C. § 1252(g)[9] strips federal courts of jurisdiction to review three actions the Attorney General make take "which represent the initiation or prosecution of various stages in the deportation process." *Reno v. American-Arab Anti-Discrimination Comm.*, 525

---

[9]8 U.S.C. § 1252(g) states that "[e]xcept as provided . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

U.S. 471, 483 (1999). These three actions are those that (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders. 8 U.S.C. § 1252(g); *Reno*, 525 U.S. at 483. The Supreme Court has narrowly interpreted these three actions in light of the purpose of 8 U.S.C. § 1252(g), which is to protect the Attorney General's discretionary decisions in the processes pertaining to the removal of aliens. *See Zundel*, 230 F. App'x at 473-74; *Mustata v. United States Dep't of Justice*, 179 F.3d 1017, 1020 (6th Cir. 1999) (citation omitted); *see also* 8 U.S.C. § 1252(a)(2)(B) (providing that "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1129b, 1129c, or 1255 of this title . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security").

On February 27, 2007, the Sixth Circuit reviewed the Zundels' petition for writ of habeas corpus, converted it to a petition for review, and denied it. *Zundel*, 230 F. App'x at 476. The Sixth Circuit and the Supreme Court (by denial of *certiorari*) determined that no court possesses jurisdiction to overturn the decision pertaining to Mr. Zundel's deportation because the decision to issue the order of removal was a "discretionary decision to 'commence proceedings' and an exercise of prosecutorial discretion . . . that is insulated from judicial review" pursuant to 8 U.S.C. § 1252(g). *Zundel*, 230 F. App'x at 475.

Additionally, the Sixth Circuit held that no court has jurisdiction because Mr. Zundel "waived his right to contest his removal" under the VWPP. *Id.* at 475-76. Pursuant to the VWPP, aliens were authorized to enter the United States as nonimmigrant visitors without a visa for a period not to exceed ninety (90) days if the alien waived "any right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien." 8

U.S.C. § 1187(b)(2). Mr. Zundel entered the United States on March 12, 2000, under the

VWPP, and left the country again shortly thereafter. *See Zundel*, 230 F. App'x at 469. When

Mr. Zundel returned to the United States in May 2000, he was readmitted for the balance of

the remaining ninety (90) days. *See id;* 8 C.F.R. § 217.3(b).[10] The Sixth Circuit determined

that Mr. Zundel's readmission to the United States was governed by the VWPP and his

reentry had no effect on the terms and conditions of the VWPP and therefore Mr. Zundel

"waived" any right to contest removal proceedings. *Zundel*, 230 F. App'x at 475-76. Thus,

pursuant to the VWPP and 8 C.F.R. § 217.3(b), which the Sixth Circuit determined was in

effect and applied to Mr. Zundel, Mr. Zundel waived the right to contest his removal. *See*

8 U.S.C. § 1187(b); *Zundel*, 230 F. App'x at 475-76. Further, any reconsideration of the

denial of Mr. Zundel's adjustment application was abandoned by operation of law upon Mr.

Zundel's deportation. *See* 8 C.F.R. § 245.2(a)(4)(ii)(A).[11]

The claims in the SASC for a writ of mandamus and an injunction, along with the

amendments in the TASC, essentially restate the Zundels' request for judicial review of the

discretionary decision of the INS, the same issue that was before the Sixth Circuit in the

Zundels' petition for writ of habeas corpus. These claims are little more than modified

---

[10]8 C.F.R. § 217.3(b) provides that "[r]eadmission after departure . . . . An alien admitted to the United States under this part may be readmitted to the United States after a departure . . . for the balance of his or her original [VWPP] admission period if he or she is otherwise admissible . . . ." 8 C.F.R. § 217.3(b).

[11]8 C.F.R. § 245.2(a)(4)(ii)(A) provides that the "departure from the United States of an applicant who is under exclusion, deportation, or removal proceedings shall be deemed an abandonment of the application constituting grounds for termination of the proceeding by reason of the departure." 8 C.F.R. § 245.2(a)(4)(ii)(A).

alternative challenges to the discretionary decision of the INS to issue the order of removal and the prior decision of the Sixth Circuit in this case. Thus, because the decision of the INS was discretionary and not subject to review, the Zundels' claims for a writ of mandamus and an injunction must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject matter jurisdiction. Further, the amendments to these claims in the TASC are futile because the amendments do not confer subject matter jurisdiction on this Court. Accordingly, the proposed amendments are denied pursuant to Federal Rule of Civil Procedure 15(a) which prohibits amending a claim that could not withstand a motion to dismiss. *See* Fed. R. Civ. P. 15(a).

To the extent the Zundels are requesting reconsideration of the denial of Mr. Zundel's adjustment application, in either the SASC or the TASC, the Court also lacks subject matter jurisdiction because the adjustment application was abandoned by operation of law. *See* 8 C.F.R. § 245.2(a)(4)(ii)(A). Therefore, this claim should also be dismissed from the SASC and any amendments in the TASC are futile. Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 15(a).

**D.      Mr. Zundel's Claim for *Bivens* Damages**

In the proposed TASC, the Zundels request a judgment for Mr. Zundel for *Bivens* damages relating to the deprivation and loss of the companionship and consortium of Mrs. Zundel pursuant to 8 U.S.C. §§ 1151(b)(2) and 1154. The Zundels allege that this deprivation and loss arose from alleged abuse of Mr. Zundel while he was held pending deportation at the Blount County, Tennessee jail in February 2003.

13

Insofar as Mr. Zundel has attempted to state an independent individual capacity claim based upon statutory rights pursuant to 8 U.S.C. §§ 1151(b)(2) and 1154, this claim fails because there does not exist a statutory right to adjustment of Mr. Zundel's status. Such status determination is a discretionary decision under the applicable immigration statutes. The statute that pertains to adjustment and change of status, § 1255(a), provides that an alien's status "may be adjusted by the Attorney General, in his *discretion* and under such regulations as he may prescribe." *See* 8 U.S.C. § 1255(a) (emphasis added). Further, under § 1151(b)(2), the express statutory basis asserted in the TASC, there exists no private right of action. *See* 8 U.S.C. § 1151(b)(2). Therefore, the Zundels have failed to state a claim for which relief may be granted.

Moreover, any civil rights action arising under *Bivens*[12] must be raised within the applicable statute of limitations period. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (citations omitted). Because there is no specific time limit for actions arising out of a federal constitutional damages action, federal practice is to apply the applicable state personal injury statute of limitations. *Harris*, 422 F.3d at 331 (quoting *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)). The statute of limitations in Tennessee for personal injury actions arising under federal civil rights statutes is one (1) year. *See* TENN. CODE ANN. § 28-3-104(a)(3); *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). Moreover, state laws pertaining to "closely related questions of tolling and application" will also govern federal

---

[12] In *Bivens*, the Supreme Court held that plaintiffs may sue federal officials for denying them their constitutional rights. *Bivens*, 403 U.S. at 390-97.

civil rights causes of action under 42 U.S.C. § 1983.  *Garcia*, 471 U.S. at 269; *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 464 (1975); *Harris*, 422 F.3d at 331.  The applicable discovery rule in Tennessee tolls the running of the statute of limitations only during the period in which the plaintiff had no knowledge at all that a wrong has occurred.  *Hoffman v. Hosp. Affiliates, Inc.,* 652 S.W.2d 341, 344 (Tenn. 1983).  Thus "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988) (citation omitted).

In the proposed TASC, all of the allegations concerning Mr. Zundel's claim for *Bivens* damages were completed "as of" February 2003 [Doc. 169, pp. 27-28].  Taking the allegations as true, if the events giving rise to the *Bivens* damages claim occurred in February 2003, then the one (1) year statute of limitations would bar any claims arising from these events.[13]  Further, because Mr. Zundel was present at the alleged abuse in February 2003, the Zundels should have known or should have had reason to know of any claim for damages available to Mr. Zundel under *Bivens*.  Moreover, Mr. Zundel acknowledged the events surrounding these allegations in at least two instances prior to the filing of the TASC.[14]

---

[13]The Court notes that the Zundels had two other opportunities to assert this *Bivens* damages claim, in September 2004 in the First Amended Petition and Complaint, and in October 2004 in the SASC.

[14]In the Memorandum of Points and Authorities in Support of Motion for Order Modifying Stay of Action to Allow for Discovery; and/or to Allow Amendment to Second Amended and Supplemented Complaint [Doc. 145, p. 3], the Zundels discuss Mr. Zundel's "experience[s] first hand [of] being terrorized by dogs while he was in the custody in Blount County" by Sheriff Berrong and another Blount County law enforcement defendant.  Also, in the Declaration of Bruce Leichty

Accordingly, the Court finds that the Zundels knew or should have known, in February 2003, of the events and injuries which are the basis of Mr. Zundel's proposed *Bivens* damages claim.

Further, the proposed *Bivens* damages claim and related allegations would not be permitted under Federal Rule of Civil Procedure 15(c).[15] The Zundels' allegations of abuse at the Blount County jail pertain to a new set of conduct, transactions, and occurrences than those raised in the Initial Petition and Complaint, the First Amended Petition and Complaint, and the SASC. The allegations and claims in these previous pleadings are based solely on the arrest and deportation of Mr. Zundel, despite the Zundels' apparent knowledge of the nature of the alleged abuse of Mr. Zundel at the Blount County jail.[16]

In reply to the Federal Defendants' and Sheriff Berrong's responses to the Zundels' motion to amend, the Zundels state that the proposed amendments contain allegations that were not known to the Zundels until 2006. Moreover, the Zundels state that the alleged abuse of Mr. Zundel in February 2003 was part of "organized federal misconduct" and was only cognizable after evidence was obtained that the "federal government was engaged in a systematic program of intimidation of dissidents or political detainees with dogs" along the lines of what was reported and confirmed to have occurred in the Abu Ghraib prison in Iraq

_____

in Support of Opposition to Motion to Dismiss of James Berrong [Doc. 74-1, p. 8], Mr. Zundel, in a series of published letters copyrighted in 2004, recounted his alleged experiences at the Blount County jail.

[15]*See supra* text Section A, part 4.

[16]*See supra* note 14.

[*See* Doc. 192, p. 8]. The Zundels assert that they were not aware "until 2006 of critical information[17] that for the first time supported a claim that the intimidation by dogs was part of organized federal misconduct in this case likely aimed at Ernst Zundel specifically." [Doc. 192, p. 8]. Thus, the Zundels argue, relation back under Rule 15(c) should be permitted because the 2006 discovery of the critical information did not put the Zundels on notice of this *Bivens* damages claim and such late discovery should offset any resulting prejudice to the Federal Defendants and Sheriff Berrong.

The Court has considered the Zundels' new *Bivens* damages claim and its relationship to the 2006 discovery of the critical information. However, the Court finds that, even without this newly discovered information regarding the alleged organized misconduct, any claim Mr. Zundel had for *Bivens* damages should have been asserted in an earlier pleading. Insofar as the Zundels are alleging a claim that the Federal Defendants and/or Sheriff Berrong, in their individual capacities,[18] violated Mr. Zundel's constitutional rights (the allegation required for a *Bivens* action), the Zundels knew or should have known of these facts at the time of the filing of the SASC, if not the First Amended Petition and Complaint. The amendments in the TASC allege that "Zundel was brutalized and terrorized with dogs"

---

[17]The source of this "critical information" is not completely clear to the Court. The Court has reviewed the "news report" by Christopher Bollyn titled "Abu Ghraib Method of Psychological Torture Using Dogs First Practiced in U.S. County Jails" and has concluded that the information contained in that article consists of little more then published statements by Mr. Zundel regarding the alleged abuse at Blount County jail and other reports of abuse similar to what Mr. Zundel has alleged at a jail in New Jersey [Doc. 185-1].

[18]The Court also notes that most of the Federal Defendants and Sheriff Berrong have not been sued in their individual capacities.

17

and was pulled by his legs "out of bed by a 'swat team,' dragged down the hall and thrown on the floor, face down, while barking, salivating dogs" snarled at him and that such events were "recorded on Camcorders operated by females dressed in black." [Doc. 169, ¶¶ 124-26]. If these allegations had been pled in an earlier pleading, they might have constituted a claim for a deprivation of a constitutional right under *Bivens*. In other words, with or without any evidence of "organized federal misconduct," the Zundels would still have been aware of the alleged facts providing the basis for Mr. Zundel to assert a *Bivens* damages claim. However, such a claim was not asserted until the TASC, more than five years after the events occurred.

Thus, because these claims were not a part of the initial pleadings, and because the allegations relate to a different set of transactions and occurrences then those asserted in the prior pleadings, the proposed claims and allegations are therefore not permitted under Rule 15(c). Additionally, such claims would also be barred by the one (1) year statute of limitations that applies in actions for *Bivens* damages and thus would not survive a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. Rule 15(a)(2). Therefore, the Zundels' request to amend and add the proposed claim regarding Mr. Zundel's claim for *Bivens* damages and the accompanying allegations are hereby denied and deemed futile.

**E.     Mrs. Zundel's Claim for *Bivens* Damages**

In the SASC and the proposed TASC, the Zundels allege a claim for *Bivens* damages for Mrs. Zundel, stating that she was "deprived without cause of the companionship and consortium of her husband, and of the benefits of marriage" and that she was deprived of her statutory right, pursuant to 8 U.S.C. §§ 1151(b)(2) and 1154, to have her husband's status

18

adjusted to lawful permanent residence based on her own status as a United States citizen and her petition [Docs. 169, ¶¶ 134-36].

In *Bivens*, the Supreme Court held that individuals could recover money damages for any injuries they have suffered as a result of a federal official's violation of the Constitution. *Bivens*, 403 U.S. at 397. In analyzing a *Bivens* claim, a court will ask whether "the facts alleged show the officer's conduct violated a constitutional right" and whether the constitutional right was "clearly established" at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).[19] As part of this analysis, a court will also determine whether the federal officials sued are entitled to qualified immunity. *See id.*

Because a claim for *Bivens* damages must allege the deprivation of a constitutional right, the Court assumes that the constitutional right Mrs. Zundel is asserting is that she was deprived, by federal officials or those acting under color of federal law, of the companionship and consortium of her husband and of the benefits of marriage. Thus, the first prong of the *Bivens* analysis involves the determination of whether there exists a constitutionally protected right to consortium and, if such a right is found, whether it has been violated. *See Saucier*, 533 U.S. at 200-01.

---

[19]It is no longer mandatory that district courts conduct the two step test of *Saucier* in the order described. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is appropriate, it should not longer be regard as mandatory."). Courts now have the discretion to move directly to the second prong of the test. *See id.* Here, the Court, in its discretion, finds it appropriate to use the two-step *Saucier* test.

In reviewing the decisions of the courts that have addressed this issue, a majority of the cases reviewed indicate that most courts have found that the Constitution does not include a right to spousal consortium. *See Niehus v. Liberio*, 973 F.2d 526, 534 (7th Cir. 1992) (concluding that "[d]eprivations of the lesser services comprehended in the portmanteau term 'consortium' are not deprivations of liberty within the restricted meaning that the term bears in the Constitution."); *Gresham v. Dell*, 630 F. Supp. 1135, 1138 (N.D. Ga. 1986); *Harbury v. Deutch*, 233 F.3d 596, 606 (D.C. Cir. 2002), *rev'd in part on other grounds*, 536 U.S. 403 (2002) (refusing to hold that the plaintiff had alleged a constitutional violation based on interference with familial association because she had alleged a claim that involved neither "a parent-child relationship nor purposeful[] interference with a familial relationship"); *Norcross v. Town of Hammonton*, No. 04-2536, 2006 WL 1995021, at *3 (D.N.J. July 13, 2006). *But see Pahle v. Colebrookdale Township*, 227 F. Supp. 2d 361, 383 (E.D. Pa. 2002).[20] Accordingly, this Court finds that the loss of spousal consortium is not a constitutional right that may be asserted by a spouse in an action for *Bivens* damages.

---

[20]In *Pahle*, the district court held that "precedent suggests that a husband or wife should be able to claim violations of his or her *own* constitutional rights under § 1983 for unlawfully, government-imposed injuries to a spouse that have a devastating impact on their marriage; namely, he or she can allege deprivation of consortium without Due Process of law." *Pahle*, 227 F. Supp. 2d at 381-82 (emphasis in original). In so holding, the court cited the reasoning of a Third Circuit decision that the Sixth Circuit has declined to follow. *See id.* at 381 (citing *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 509 n.7 (3rd Cir. 1985) (giving a parent grounds to maintain an action under § 1983 for deprivation of liberty when the parent's child died as a result of an unlawful state action); *see Purnell v. City of Akron*, 925 F.2d 941, 949 n.6 (6th Cir. 1991) (stating that "[i]n this Court we have held, however, that section 1983 provides a cause of action which is *personal* to the injured party") (emphasis in original).

Notwithstanding this determination that the first prong has not been satisfied, the Court will also inquire whether the Federal Defendants would be entitled to qualified immunity. Similar to actions brought pursuant to 42 U.S.C. § 1983, federal officials will be immune from a *Bivens* damages claim "insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Downie v. City of Middleburg Hts.*, 76 F. Supp. 2d 794, 803 (N.D. Ohio 1999). Accordingly, because the Court has found no binding precedent from the Supreme Court, the Sixth Circuit, or this Court itself, stating that a right to spousal consortium was a clearly established right under the Constitution in February 2003, and because the Court has found that no rights were implicated under the Constitution or federal law, the Court finds that the Zundels have failed to stated a *Bivens* damages claim.

Moreover, in the SASC, the Zundels asserted their *Bivens* claim against Federal Defendants Michael Conway, Gary Slaybough, Jimmy Mounce, and Sheriff Berrong in their *official* capacities. However, a *Bivens* damages claim is only properly asserted against individual federal officials in their *individual* capacities. *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (citations omitted) (stating that "a *Bivens* claim [for damages] may not be asserted against a federal official in his official capacity"); *see also Shaner v. United States*, 976 F.2d 990, 994 (6th Cir. 1992). Only now, in the proposed TASC, have the Zundels sought leave to amend the SASC to assert *Bivens* damages claims against John Ashcroft and Tom Ridge as individual capacity defendants. However, neither John Ashcroft nor Tom

21

Ridge were ever personally served as is required under Federal Rule of Civil Procedure Rule 4(i)(3),[21] despite the fact that this claim was first raised in the SASC in November 2004. *See* Fed. R. Civ. P. 4(i)(3) (providing that "[t]o serve a United States agency or corporation, or a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf, a party must serve the officer or employee under Rule 4(e), (f), or (g)"). Additionally, even if Sheriff Berrong was found to have been acting under color of federal law, the Zundels have not sued him in his individual capacity, even in the proposed amendments to the TASC.

Finally, in regard to Mrs. Zundel's claim for *Bivens* damages pursuant to her alleged statutory rights under 8 U.S.C. §§ 1151(b)(2) and 1154, this claim also fails for the same reasons the statutory claim pursuant to §§ 1151(b)(2) and 1154 failed in regard to Mr. Zundel. Mrs. Zundel (like Mr. Zundel) does not have a statutory right to have Mr. Zundel declared her immediate relative spouse and therefore the Zundels have failed to state a claim for denial of statutory rights.

In conclusion, the Zundels' claim for *Bivens* damages for Mrs. Zundel in the SASC must be dismissed because the Zundels have failed to state a claim for which relief can be granted. Moreover, the proposed amendments in the TASC do not salvage this claim. Accordingly, Mrs. Zundel's claim for *Bivens* damages is hereby dismissed pursuant to Rule

---

[21]The Zundels have not sued Federal Defendants Michael Conway, Gary Slaybaugh, or Jimmy Mounce in their individual capacities but only in their official capacities, therefore these claims must also fail.

12(b)(6) and any amendments are deemed futile.  *See* Fed. R. Civ. P 12(b)(6); Fed. R. Civ. P. 15(a).[22]

## III.  CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Zundels' Motion for Order Allowing Filing of the TASC; and for Order Confirming Right to Discovery [Doc. 171] will be **DENIED**; the Federal Defendants' Renewed Motion to Dismiss the Remaining Claims Against Federal Defendants [Doc. 157] will be **GRANTED**; and Sheriff Berrong's Renewed Motion to Dismiss [Doc. 162] will be **GRANTED**.   Accordingly, pursuant to this Memorandum and accompanying Order, this case is hereby **DISMISSED**.

**AN APPROPRIATE ORDER WILL BE ENTERED.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[22]The proposed TASC also seeks to add former Secretary of State Condoleeza Rice for the purpose of providing the Court with an official who could purportedly be ordered to authorize and arrange for Mr. Zundel's return to the United States [*See* Doc. 169, ¶¶ 4, 7, 114].  However, any amendment having to do with the addition of Condoleeza Rice does not change the Court's analysis and therefore the Court will not address this proposed amendment.

23